OPINION OF THE COURT
Richard W. Wallach, J.
The State Liquor Authority has denied a restaurant liquor license to petitioner, the Jane Street Seafood Cafe Corp., on the ground that the cafe’s entrance is 85 feet from "a building *403 occupied exclusively as * * * church * * * or other place of worship” (Alcoholic Beverage Control Law, § 64-a).
In this CPLR article 78 proceeding the cafe, which has been the subject of favorable critical reception by the gourmet sector of journalism, seeks a reversal of that determination. The building which purportedly offends the well-known 200-foot cordon sanitaire is a three-story dwelling, the first floor of which contains some visible accoutrements of a religious enterprise. A large sign above the door proclaims the premises as God’s Lighthouse; two circles of stained glass adorn the windows with an intersecting cross and crown; and a plaque below one window contains the following legend: "Nondenominational Chapel open daily for prayer, meditation and bible study — All welcome — God hears and answers prayer. Rev. William H. Lothrop, Minister.”
The court finds that there is no support for the authority’s conclusion that God’s Lighthouse is a building occupied exclusively, or even "predominantly,” (Matter of Multi Million Miles Corp. v State Liq. Auth., 55 AD2d 866, affd 43 NY2d 774) as a place of worship; on the contrary what evidence there is points to the opposite conclusion. Accordingly, the petition must be granted, and the decision of the authority vacated (Matter of Matty's Rest. v New York State Liq. Auth., 21 AD2d 818).
First of all, there is no dispute that of this three-story building, only a portion of the ground floor is devoted to "a chapel”, and the remainder of that floor is used as a bedroom. The mere fact that a portion of a facility is available for worship does not meet the statutory test, even where services intermittently take place there (Corbett v Maraventano, 61 NYS2d 211). The facts here are quite similar to Matter of Finley (58 Misc 639) where the issue of exclusive use was the same. In Finley, the parlor floor of a dwelling was used for church services and a Sunday school; the pastor lived on the second floor with his family, and the third floor was occupied by a woman with her children who looked after the premises. The court (Crane, J.) held that the structure fell short of the statutory criterion of predominant church or worship use.
A church has been defined as " 'an assembly of persons united by the profession of the same Christian faith’ ” (Josey v Union Loan & Trust Co., 106 Ga 608, 611). The form of worship is of no significance here — "so long as it is religious worship, it makes no difference whether the worshippers, are *404 Christians, or pagan idolaters” (Rogers v Brown, 20 NJL 119, 121). But whatever the faith professed, the sine qua non for church status is "the primary and paramount use of the building for the holding of religious services” (Matter of Trustees of Calvary Presbyt. Church v State Liq. Auth., 245 App Div 176, 178, affd 270 NY 497). What is missing from the record here is evidence of a single congregant, (there were 54 in the Calvary Church, supra) or the slightest evidence that the chapel facility on the first floor is the subject of other than private use by the Rev. Lothrop and his immediate family. The mere invitation to the public, without some evidence that the invitation has met with any response, is insufficient to meet the statutory definition of a "place of worship,” particularly as a predominant use.
The certificate of occupancy which was issued to God’s Lighthouse on October 19, 1972, shows its occupancy classification as a parish house, and a note appears thereon stating "Entire building for use as a Parish House for Chaplain’s residence and private chapel.” The subcellar and cellar areas were designated respectively as for storage and for chaplain’s study and meter room. The first floor contains the small chapel, and an adjoining bedroom. The second and third floors are designated as "Living quarters for Chaplain’s.” Thus the tax exempt status of the enterprise is explained by its status as a parish house, and not by the fact that it is a church.
While God’s Lighthouse may well have legitimate religious and spiritual purposes which satisfy the standards for incorporation under the Religious Corporations Law, these are not to be equated with the requirements needed to sustain the 200-foot radially interdicted zone set up by the Alcoholic Beverage Control Law.
Meditation, bible study and prayer are properly revered aspects of the pursuit of religious truth. However, it was not contemplated that a private chapel, which merely offers a generalized opportunity to the public for these individual pursuits, merits the same protection as a church.
It is evident that some of those connected with the decision of the administrative tribunal appealed from shared the foregoing conclusion. In his report of April 10, 1979, to the members of the authority, Deputy Commissioner R. S. Lapin-sky recommended rejection of the adverse determination of the local board and approval of the license with the following comment: "It is this writer’s opinion that the non-denomina *405 tional chapel is not a church as ordinarily defined.” In the final adverse determination of the authority, Commissioner Doyle dissented and voted for approval of the license.
The court holds that the finding essential to the authority’s determination here — that God’s Lighthouse is either a church or a place of worship as defined in the statute — is arbitrary, capricious, and without any evidentiary support.
Accordingly the determination of the authority is annuled and the authority is directed to issue the license.